UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ARTHUR BARKSDALE,
                                        Plaintiff,

   vs.                                                             5:10-CV-545
                                                                                (ATB)

ANTHONY COLAVITA, *et al*,
                                        Defendants.
_____

HON. ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM DECISION AND ORDER

On June 22, 2011, with the consent of all parties, this matter was referred to me for all further proceedings, including the entry of final judgment, by Senior United States District Judge Neal P. McCurn, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule N.D.N.Y. 73.1. (Dkt. No. 17). Liberally construed, plaintiff's complaint alleges that defendants violated his constitutional rights, falsely imprisoned plaintiff, and assaulted plaintiff. (Dkt. No. 1).

Presently before this court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 18). Plaintiff has responded in opposition to the motion. (Dkt. Nos. 19–22). Defendants filed a reply. (Dkt. No. 24). For the following reasons, the court will grant defendants' motion for summary judgment, dismissing the complaint in its entirety.

### I.    Facts and Contentions

The following facts are uncontroverted. On February 13, 2009, plaintiff went to the Carousel Mall with his daughter. (Dkt. 18-9 ¶ 6). They stopped at the food court,

where a domestic incident[1] had just taken place, and an individual had been taken into custody by three City of Syracuse police officers. (Dkt. No. 18-9 ¶¶ 7, 10, 11). Defendants Officers Colavita and Quatrone, in uniform, arrived to assist, and stayed on the food court level to prevent the crowd from interfering with the other three officers escorting the arrestee down the escalator. (Dkt. No. 18-9 ¶ 12, 13). Plaintiff got on the escalator with his daughter after the three officers, who were accompanying the arrestee. (Dkt. No. 18-9 ¶ 14). Officer Colavita, who had remained on the upper level with Officer Quatrone, then observed the arrestee struggling with the officers on the first floor. (Dkt. No 18-9 ¶ 15).

Officer Colavita brought the incident to Officer Quatrone's attention, and they got on the crowded escalator, on their way to the first floor. (Dkt. No. 18-9 ¶¶ 17, 18). Officer Quatrone went first, touching people on the shoulder and saying "Excuse me, [p]olice." (Dkt. No. 18-9 ¶¶ 19, 20). Officer Quatrone passed by plaintiff, who did not see the officer until after he had passed. (Dkt. No. 18-9 ¶ 21, 22). Officer Colavita was a few steps behind Officer Quatrone. (Dkt. No. 18-9 ¶ 23).

Plaintiff and defendants disagree on exactly what happened on the escalator and certain details about what happened once plaintiff reached the bottom.[2] All agree, however that when Officer Colavita and plaintiff arrived at the bottom of the escalator, Officer Quatrone grabbed plaintiff and pulled him off the escalator. (Dkt.

---

[1] There is no indication that plaintiff had any involvement in, or relationship to, the domestic dispute.

[2] These views will be discussed as they become relevant to the analysis below.

2

No. 18-9 ¶ 30).  Officer Colavita grabbed plaintiff's left arm, and he and other officers pulled plaintiff's hands together behind his back and handcuffed him.  (Dkt. No. 18-9 ¶ 34).  Plaintiff was arrested and charged with Obstructing Governmental Administration in the Second Degree, Resisting Arrest, and Harassment in the Second Degree.  (Ex. A, Dkt. No. 18-2; Barksdale Dep. 44-45, Dkt. No. 18-6).  He was later acquitted on all charges, following a trial in Syracuse City Court.  (Barksdale Aff. ¶ 8, Dkt. No. 19).

## II. Summary Judgment–Legal Standards

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56[3]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990).  "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment." *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987) (citation omitted).  A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [fact finder] could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, and admissions on

---

[3] Rule 56 was extensively amended, effective December 1, 2010.  As the Advisory Committee Notes indicate, "the standard for granting summary judgment remains unchanged."  The revised rule explicitly adopts procedures relating to summary judgment motions "consistent with those already used in many courts."

file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56 (c)(1)(A). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48.

### III.   Municipal Liability

####    A.   Legal Standards

Plaintiff names the City of Syracuse as a defendant in this action. "In a § 1983 action against a municipality, the plaintiff must establish that 'he was unconstitutionally treated and that the constitutional violation resulted from an identified policy, custom, or practice of the municipality.'" *Mackey v. Property Clerk of N.Y. City Police Dep't*, 26 F. Supp. 2d 585, 590 (S.D.N.Y. 1998) (citing *Williams v. New York City Police Dep't*, 930 F. Supp. 49, 54 (S.D.N.Y. 1996)); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). A claim under § 1983 against a municipality cannot be based on the theory of *respondeat superior*. *Monell*, 436 U.S.

at 691. A plaintiff must demonstrate that the government official who violated plaintiff's constitutional rights did so because of a municipality's policy. *Id.* at 694.

A municipality may not be found liable simply because one of its employees committed a tort. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (internal quotations omitted). Plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal connection between the municipal action and the deprivation of federal rights. *Id.* at 404. Where the plaintiff claims that the municipality has not directly inflicted and injury, but has "caused" an employee to do so, "rigorous standards of culpability an causation must be applied" so that the municipality is not held liable solely for the actions of an employee. *Id.* at 405. "'[B]oilerplate assertions that a municipality has a custom or policy resulting in a constitutional deprivation of plaintiff's rights are insufficient.'" *Id.* (quoting *Bohmer, supra*). The policy must be the "moving force" behind the constitutional violation. *Id.* at 404.

**B.     Application**

Plaintiff alleges that the City of Syracuse had a policy or custom to fail to exercise reasonable care in hiring, training, and supervising police officers, and therefore failed to adequately prevent constitutional violations by police officers. (Compl. ¶¶ 25–27). Defendants argue that plaintiff has failed to show a policy of the City of Syracuse in hiring, supervision, or training that was deficient, and therefore failed to show that a policy of the City of Syracuse caused the alleged constitutional violations. Plaintiff did not address this claim in his response to defendants' motion

for summary judgment. Plaintiff's complaint gives no basis for his claims against the City of Syracuse, and only contains "boilerplate" assertions that are insufficient to state a claim.[4] Because plaintiff failed to establish any policy, custom, or practice of the City of Syracuse, his claims as to the City of Syracuse are hereby dismissed, and the court may proceed to a consideration of whether the individual defendants violated plaintiff's constitutional rights.

## IV.    Probable Cause and False Arrest

### A.    Legal Standards

The court generally looks to the law of the state in which the arrest occurred when analyzing § 1983 claims for false arrest. *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). To establish a claim of false arrest under New York law and § 1983, a plaintiff must show that the defendant intentionally confined him without consent or justification. *Swindell v. New York Dept. of Environmental Conservation*, 371 F. Supp. 2d 172, 179 (N.D.N.Y. 2005). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).

"An arrest is supported by probable cause 'when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are

---

[4] There is no allegation that the defendant officers are policymakers whose actions or decisions could amount to stating a policy. *See Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (in order to establish municipal liability based on a single decision of one officer, that person must be an official policymaker for the conduct challenged in the lawsuit).

sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Kilburn v. Village of Saranac Lake*, 413 Fed. App'x 362, 363 (2d Cir. 2011) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). A court looks to the "'totality of the circumstances' in deciding whether probable cause exists for an arrest." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "The mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

**B.     Application**

In this case, there is no dispute that plaintiff was arrested for obstructing governmental administration, harassment, and resisting arrest, and was ultimately acquitted on all charges. The issue, however, is whether there was probable cause to support plaintiff's arrest.

As indicated above, as a result of a domestic incident at Carousel Mall, police officers had made an arrest of an individual unrelated to plaintiff, and a crowd had gathered. (Stmt. of Mat. Facts ¶¶ 10–11). Plaintiff had been shopping with his daughter, and they stopped at the food court on their way out of the mall. (Stmt. of Mat. Facts ¶¶ 6–7). Before plaintiff got on the escalator leading to the exit, he noticed defendants Colavita and Quatrone were at the top, monitoring the crowd while other

7

officers escorted the arrestee down the escalator. (Defs.' Stmt. of Mat. Facts ¶ 13, *see also* Quatrone Dep. 10–11, Dkt. No. 18-4; Barksdale Dep. 14–18).

After the arresting officers arrived at the bottom of the escalator, the arrestee began struggling with the officers on the first floor, and Officers Colavita and Quatrone started down the escalator to assist the other officers. (Stmt. of Mat. Facts ¶¶ 15–19). Officer Quatrone proceeded first, and made it to the bottom without incident. (Stmt. of Mat. Facts ¶¶ 19–22). At his deposition, Officer Quatrone testified that when he reached the bottom of the escalator, he was "looking all over," because the officers were still struggling with the individual to the right of the escalator, and another disturbance was developing to the left of the escalator. (Quatrone Dep. 23–24).

Officer Quatrone testified that he heard "something or somebody yelling or something loud" coming from the escalator, so he turned around to see where the sound was coming from. (Quatrone Dep. 24). According to Officer Quatrone, when he turned around, he saw plaintiff strike Officer Colavita with his left arm, causing the officer to fall back on the escalator. (Quatrone Dep. 24). Officer Quatrone testified that when he saw what was happening, he tried to make his way up the escalator. (Quatrone Dep. 25). When he reached plaintiff and Officer Colavita, they were both on the ground, struggling with each other. (Quatrone Dep. 25). Officer Quatrone testified that he then pulled plaintiff up and told plaintiff to put his arms behind his back because he was under arrest. (Quatrone Dep. 25–26).

Officer Colavita testified at his deposition that plaintiff struck him three times,

once with his right arm, then twice with his left. (Colavita Dep. 18–35, Dkt. No. 18-5). The third blow knocked Officer Colavita to the ground. As he fell, he pulled plaintiff down with him. (Colavita Dep. 18–35). Officer Colavita testified at his deposition that he and plaintiff struggled on the escalator, Officer Quatrone pulled plaintiff off of Officer Colavita, and then the officers arrested plaintiff. (Colavita Dep. 35–37).

Plaintiff testified at his deposition that when Officer Quatrone passed him, going between plaintiff and his daughter, plaintiff heard the sound of keys. (Barksdale Dep. 20). Plaintiff also testified that he was "familiar with keys," and that "from working in a jail for all these years[, I know] that when you hear keys you know it's mostly officers running." (Barksdale Dep. 21). Plaintiff stated that he did not hear Officer Quatrone say anything. (Barksdale Dep. 21). Instead, after Officer Quatrone passed plaintiff on the escalator, plaintiff claims he was pushed from behind and heard a male voice say "move, move," and plaintiff "kind [of] lost [his] balance and put [his] hand back." (Barksdale Dep. 21). Plaintiff testified that he then heard someone say, numerous times, that you "don't touch a police officer." (Barksdale Dep. 24). After plaintiff heard this statement, he turned his head over his left shoulder and saw Officer Colavita. (Barksdale Dep. 24). Plaintiff testified that he said to himself, "Oh, I touched a police officer." (Barksdale Dep. 23).

Plaintiff testified that Officer Colavita was "grabbing, tussling and screaming and yelling." (Barksdale Dep. 24). Plaintiff testified that he was then "taken down" by Officer Colavita, while they were still on the escalator. (Barksdale Dep. 26).

9

Plaintiff testified that Officer Colavita grabbed plaintiff from behind and put him down on the escalator on his back, with Officer Colavita on top of plaintiff. (Barksdale Dep. 27). Plaintiff stated that he was unable to see Officer Colavita's face, and he only saw the feet and legs of other people on the escalator. (Barksdale Dep. 27). Plaintiff testified that he did not know exactly where his hands were, other than they were not on Officer Colavita. (Barksdale Dep. 28). Soon afterward, plaintiff was pulled off the escalator by Officer Quatrone. (Barksdale Dep. 26, 29–30).

Although the various accounts of exactly what transpired on the escalator differ, the court will focus on the perspective of the officers, because it is their knowledge and understanding of the circumstances that will establish whether there was probable cause to arrest plaintiff. Officer Quatrone came down the escalator to address the problems that the other three officers were having with the individual they had arrested. He also became concerned with another disturbance that was developing at the bottom of the escalator. Officer Quatrone turned around when he heard yelling or a loud noise on the escalator behind him. When he looked up the escalator, Officer Quatrone saw plaintiff's arm come into contact with Officer Colavita, and he saw both of them fall down on the escalator, struggling with one another. Even if the blow to Officer Colavita had been an accident, as plaintiff alleges, he admits that his arm came into contact with Officer Colavita[5], and they both ended up wrestling on the escalator. From Officer Quatrone's perspective, viewing from below, there would have been

---

[5] Plaintiff testified that his right hand was on the escalator railing, but he felt something push into his back and then put his left hand back, which was a "natur[al] reaction to try and get my balance." (Barksdale Dep. 22).

probable cause to believe that plaintiff was trying to impede Officer Colavita's descent on the escalator and thus "obstructing governmental administration."[6]

Officer Colavita was coming down the escalator to assist other officers on the first floor of the mall. As he came down the escalator a few steps behind Officer Quatrone, he attempted to pass by plaintiff. As noted, Officer Colavita alleges that he was struck three times by plaintiff's arms and knocked to the ground. While plaintiff recounts the events differently, he acknowledges that, as he lost his balance as a result of being pushed from behind, his left arm came up and came into contact with Officer Colavita. Even if plaintiff's version is credited, for the purposes of this motion, he still hit Officer Colavita with his elbow, which the officer could reasonably interpret, under the circumstances, to be intentional interference. Thus, Officer Colavita had probable cause to believe that plaintiff was obstructing him in the performance of his official duties. Accordingly, the officers had probable cause to arrest plaintiff, and plaintiff's claim based on false arrest is therefore dismissed.

## V.   **Excessive Force**

### A.   **Legal Standards**

The right under the Fourth Amendment to be free from unreasonable search and

---

[6] "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, . . ." N.Y. Penal Law § 195.05. Under N.Y. Penal Law § 240.26, Harassment in the Second Degree encompasses actual or attempted shoving, kicking, or otherwise subjecting another person to physical contact with intent to harass or alarm. The circumstances establishing probable cause with respect to the obstruction charge would also support probable cause with respect to plaintiff's arrest on harassment charges.

seizure prohibits the use of excessive force by law enforcement in the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Applying the "test of reasonableness" to an analysis of a Fourth Amendment claim "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations omitted); *see also Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010) (citing *Graham* and listing the three factors). Because the inquiry of whether force was excessive is by nature fact-specific, granting summary judgment on an excessive force claim is not appropriate unless "no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citing *O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003). "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

**B.   Application**

Plaintiff testified that "[Officer Colavita] should have never ever pushed me from behind. He should never even took [sic] me down [on] the escalator. [Officers Colavita and Quatrone] should have never handcuffed me [or] dragged me," and these actions constituted excessive force. (Barksdale Dep. 55). Accepting plaintiff's version of events, for the purposes of this motion, the court concludes that no

reasonable jury could find that the officers used unreasonable or excessive force against him under the circumstances.

As to the force used before and during the arrest, plaintiff testified that he was "taken down" by Officer Colavita on the escalator. (Barksdale Dep. 25). This happened so quickly that plaintiff was unable to recall where he was on the escalator, where Officer Colavita grabbed him, where his own hands were, and how long he was down on the escalator. (Barksdale Dep. 24–26). Plaintiff testified that everything happened so quickly that "the next thing I knew I was being pulled off the escalator" by Officer Quatrone and subsequently handcuffed. (Barksdale Dep. 26, 29).

Plaintiff testified that he was pulled off the escalator by his right arm, but remained on the ground. (Barksdale Dep. 30). Plaintiff acknowledged that he was being held by his right arm, and when instructed to put his hands behind his back, he did not put his left arm behind his back. (Barksdale Dep. 31). Plaintiff testified that after Officer Quatrone told him to put his hands behind his back, plaintiff "kept looking up at [Officer Quatrone] and telling him 'Quatrone, you know who I am. I didn't do anything.'" (Barksdale Dep. 31). It was only after someone grabbed plaintiff's left arm and put it behind his back that he was handcuffed. (Barksdale Dep. 31). The incident caused injuries in the form of a scrape on the forehead and bruises on his ankles, knees, and wrists.[7] (*Id.* at 31, 42).

After plaintiff was handcuffed, he stated that the officers helped him stand and

---

[7] Plaintiff treated his injuries himself with Neosporin ointment and ice packs, and did not seek other treatment. (Barksdale Dep. 42–44).

13

escorted him down the hallway. (Barksdale Dep. 33). Plaintiff makes no claim that the officers used force, other than taking him to the ground on the escalator and forcing his hands behind his back after he was pulled off the escalator at the bottom so the officers could handcuff him.

As discussed above, Officer Colavita was attempting to pass plaintiff on a crowded escalator to assist fellow officers who were struggling with an arrestee on the first floor. Under the circumstances, it was not unreasonable for Officer Colavita to "push" plaintiff from behind as he tried to get by him. As discussed above, Officer Colavita had probable cause to believe that plaintiff tried to strike the officer with his arm and was obstructing governmental administration. Under the circumstances, the officer did not apply unreasonable or excessive force when he took plaintiff down with him as he fell as a result of contact with plaintiff's elbow.

Plaintiff makes no specific accusations of force other than Officer Colavita "grabbing, tussling, and screaming and yelling" on the escalator, getting pulled off the escalator by Officer Quatrone, and his hands forced behind his back so the officers could handcuff plaintiff. (*See* Barksdale Dep. 24). Given the plaintiff's admitted refusal to put one arm behind his back as the officers were attempting to complete a probable cause arrest, the limited use of force to move his other arm behind his back so he could be handcuffed was not excessive or unreasonable.

While plaintiff clearly believes that the officers should not have arrested him, the court has already determined that the officers had probable cause to do so. The court finds that the force used by the officers was reasonable and appropriate to effect

that arrest. The force defendants used was limited and necessary to subdue an individual who appeared to be physically obstructing Officer Colavita's efforts to pass him to assist other officers, to pull plaintiff off the escalator, and to handcuff him. Plaintiff's claim based on excessive force is dismissed.

## VI. Qualified Immunity

Defendants argue that they are entitled to qualified immunity, which protects government officials when performing their discretionary functions when "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201(2001), modified by *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 811 (2009) (holding that, "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory in all cases").

Additionally, officers are entitled to qualified immunity when they have "arguable probable cause to arrest," which exists if either of two conditions are met: "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Jean v. Montina*, 412 Fed. App'x 352, 354 (2d Cir. 2011) (citing *Amore v. Navarro*, 624 F.3d 522, 536 (2d Cir. 2010) (internal quotation marks omitted).

Even assuming that a question of fact exists that would be sufficient to defeat

summary judgment as to whether the officers had probable cause to arrest plaintiff, the officers would still be entitled to qualified immunity. The incident, at a minimum, is one in which officers of reasonable competence could disagree as to whether they had probable cause to arrest plaintiff. Therefore, Officers Quatrone and Colavita had "arguable probable cause" to arrest plaintiff and to use the force reasonably necessary to effect that arrest. Therefore, defendants are entitled to qualified immunity.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that defendants' motion for summary judgment (Dkt. No. 18) is hereby **GRANTED**, and it is further

**ORDERED**, that the complaint in this action be **DISMISSED IN ITS ENTIRETY**, and it is further

**ORDERED**, that judgment be entered in favor of the **DEFENDANTS**.

Dated: October 5, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge